### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

VITO C. GRIPPO,

           Petitioner,

    v.

UNITED STATES OF AMERICA,

           Respondent.

Civ. No. 14-4577 (KM)

**OPINION (Corrected)**

__KEVIN MCNULTY, U.S.D.J.__

## I.    INTRODUCTION

The petitioner, Vito C. Grippo, *pro se,* seeks relief pursuant to 28 U.S.C. § 2255 from this Court's judgment of conviction and sentence in *United States v. Grippo*, Crim. No. 12-820. Mr. Grippo has also filed a motion for leave to take discovery, as well as an application for leave to amend his § 2255 motion. The government has filed papers in opposition. For the following reasons, Mr. Grippo's motions will be denied.

## II.    BACKGROUND

The underlying criminal case, Crim. No. 12-820, arose from Mr. Grippo's conspiracy with others to defraud and to obtain money and property through false representations. Mr. Grippo, along with his son, represented himself as someone who could arrange mortgage refinancings to relieve the plight of homeowners in financial distress. Many were financially unsophisticated or had a poor command of English. (Pre-sentence report ("PSR") at p. 6) Mr. Grippo and his associates caused these unsophisticated parties to sign away their homes to straw buyers. The homeowners were then directed to make their mortgage payments to an entity controlled by Mr. Grippo. He forwarded some of the mortgage payments to the lenders, but

diverted the rest to himself and his coconspirators. (*See id.*) Because loan payments were not received by the mortgagees, foreclosures often resulted. (*See also* Factual Basis for guilty plea, Plea Transcript at 24-30 (Dkt. No. 12-3).)

On December 13, 2012, the grand jury returned an indictment charging Mr. Grippo in four counts. (Crim. No. 12-820, Dkt. No. 1) Count 1 charged Mr. Grippo with conspiracy to commit wire fraud. Counts 2 and 3 charged him with subscribing to false tax returns for the years 2006 and 2007. Count 4 charged Mr. Grippo with aiding in the preparation of a false tax return for the year 2008.

On February 13, 2013, Mr. Grippo entered into a plea agreement with the government. He agreed to make full restitution for all losses resulting from the offense of conviction in the amount of $1,319,721. Mr. Grippo also agreed to stipulate at sentencing to the statements set forth in Schedule A of the plea agreement, as follows:

1. That there was a loss of more than $1,000,000.

2. That there were ten or more victims.

3. That a victim of the offense was a vulnerable victim.

4. That the total Group Offense Level for the wire fraud conspiracy was 31.

5. That the parties agreed to the Total Guidelines Offense level applicable to Mr. Grippo was 28.

6. That the parties agreed that a sentence within the Guidelines range that results from a Total Guidelines Offense Level of 28 is reasonable.

(*See* Plea Agreement, Dkt. No. 12-2, at 9-11) The parties further agreed that, if the Court accepted the agreed offense level of 28, neither side would argue for imposition of a sentence outside of the resulting range. (*Id.* at 8)

Also on February 13, 2013, Mr. Grippo, along with his attorney, Patrick McMahon, Esq., signed a consent judgment and preliminary order of forfeiture. (*See* Dkt. No. 19-2) Mr. Grippo thereby agreed to forfeit a sum of at least $1,319,721, representing the proceeds traceable to the commission of the offenses to which he agreed to plead guilty. (*See id.* at p.2)[1]

On February 13, 2013, Mr. Grippo and Mr. McMahon signed and submitted an Application for Permission to Enter Plea of Guilty. (*See* Dkt. No. 12-4) In that document, Mr. Grippo stated as follows:

> I have told my lawyer all the facts and circumstances known to be about the charges set forth in the indictment.
>
> I am satisfied that my lawyer understands the information which I have provided, and that my lawyer has counseled and advised me on the nature of each charge and on all possible defenses that I might have in this case.
>
> I believe that my lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help my lawyer has given me.

(*Id.* ¶¶ 15, 16, 42) In the course of pleading guilty, Mr. Grippo stated under oath that he read the Application for Permission to Enter Plea of Guilty, that it was true and correct and that he signed the Application of his own free will. (*See* Transcript of Guilty Plea ("Plea Tr."), Dkt. No. 12-3 at pp.13-14)

On February 13, 2013, Mr. Grippo pled guilty in open court. At the plea hearing, Mr. Grippo was sworn and admitted to receiving a copy of the indictment. (*See* Plea Tr. at 8-9) He stated that he had gone over the indictment with his attorney, that his attorney had explained the indictment to him, and that he understood the charges. (*See id.*) Mr. Grippo also stated under oath that he discussed the plea agreement with his attorney, that his attorney answered all of his

---

[1]   The final consent order of restitution, dated July 29, 2013, was in the amount of $1,275,828.00. (Dkt. No. 19-3)

questions about the plea agreement, and that he signed it knowingly. (*See id.* at 9-10) This Court

accepted the plea after concluding that it was knowing and voluntary, and that it had an adequate

factual basis. (*See id.* at p.33-34)

On June 13, 2016, this Court held a sentencing hearing. (*See* Transcript of Sentencing

Hearing ("Sentencing Tr."), Dkt. No. 12-5) Because there were no factual objections, I accepted

the PSR as constituting the Court's findings of fact. (*See* Sentencing Tr. at 3) This placed Mr.

Grippo at a Guideline offense level of 28 with a criminal history category of I, as contemplated

by the plea agreement. (*See id.*) The Guidelines range that resulted was 78 to 97 months'

imprisonment. (*See id.* at 4) The Court then invited counsel to address the 18 U.S.C. 3553(a)

factors[2] and other matters pertinent to selection of sentence. (*Id.* at 4–5)

---

[2] Section 3553(a) provides as follows:

> The court shall impose a sentence sufficient, but not greater than
> necessary, to comply with the purposes set forth in paragraph (2) of this
> subsection. The court, in determining the particular sentence to be
> imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote
>> respect for the law, and to provide just punishment for
>> the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the
>> defendant; and
>>
>> (D) to provide the defendant with needed educational or
>> vocational training, medical care, or other correctional
>> treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the
>> applicable category of defendant as set forth in the
>> guidelines--

In accordance with the plea agreement, neither side argued for a sentence outside of the Guideline range. Mr. McMahon requested that Mr. Grippo be sentenced at the low end of the advisory guidelines range. He noted that a 78 month sentence would be a very significant one. (*See* Sentencing Tr. at 6–7) Mr. McMahon also noted that Mr. Grippo had left his family in a state of "wreckage." (*See id.* at 7) According to Mr. McMahon, he was now at odds with his

---

                                (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

                                (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

                (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

        (5) any pertinent policy statement--

                (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

                (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

        (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

        (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

family, which accounted for his inability to furnish some of the financial documents requested by the Probation Office. (*See id.* at 8)

This Court then heard from the government, which recommended that Mr. Grippo be sentenced at the higher end of the advisory guideline range. (*See* Sentencing Tr. at 13) The Court permitted several victims of the offense to speak briefly. (*See id.* at 14–20) Finally, Mr. Grippo personally addressed the Court. (*See id.* at 21-22)

In arriving at a sentence, the Court started from the advisory Guideline range of 78 to 97 months. (*See id.* at 24) I then considered the so-called "Section 3553 factors," *see* 18 U.S.C. § 3553(a).

The Court found that the offense capitalized on a nationwide financial crisis, targeting victims in financial straits.[3] Mr. Grippo, I found, employed "the rawest kind of trickery[:] Slipping documents in a pile for [the mortgagors] to sign without them realizing what they were signing, and tricking them into transferring ownership of their homes." (Sentencing Tr. at 24-25) The direct harm to the individual victims must have been apparent to the defendant at the time. I acknowledged that certain homeowners might have defaulted anyway in the end, but that circumstance, I found, did not significantly mitigate Mr. Grippo's culpability. (*Id.* at 25–26) On the other side of the ledger, I considered the defendant's age, his stable family and employment

---

[3]     On behalf of financial entities controlled by himself, Grippo offered distressed homeowners participation in something called the "Equity Share Program" so that they could keep their homes. (PSR ¶ 16) In fact, victim statements revealed, the result in at least some cases was utter financial ruin. I found this conduct to be exploitative and heartless.

> This offense is heinous. It involved taking advantage of homeowners in distress. It was an exploitation of a financial crisis that affected all, and affected some very much more deeply than others, and was that choice of victims of the financial crisis that the defendant focussed on. Some frauds exploit people's bad qualities. Some frauds take advantage of people's greed or some other -- or people's foolishness. This is not one of those. This one took advantage of people's vulnerability. Many of the homeowners involved were unsophisticated. They didn't speak English well, some of them.

(Sentencing Tr. at 25)

history, the unfortunate collateral harm to his family, and the fact that he had stayed out of

serious criminal trouble for many years. (*Id.* at 26)

Because it is relevant to an issue raised on this Section 2255 motion, I quote my

observation about the defendant's remorse and interactions with the Probation Office:

> And as for defendant's remorse, he's made the necessary
> statements and been given the acceptance of possibility deduction.
> *There are disturbing aspects to his interactions with the probation
> office. I'm not going to have a hearing or make factual findings on
> that, given that I think the other factors that play here, including
> and especially the nature of the offense and the harm to the
> victims, is quite ample to justify a sentence at the upper end of the
> range. And I don't really need to get down into the weeds about,
> you know, what records were available or weren't available.* I will
> say one thing that is clear, is that everyone – heroic efforts were
> made to obtain the necessary records. Whether he purposely
> obstructed the probation office's efforts, I may not make a finding
> on that. I notice that, you know, the IRS investigation found a lot
> of unexplained cash, assets in the family members and himself for
> quite a while. I notice there was bankruptcy in 2005, and perhaps
> that's the explanation for that. But all that put together doesn't
> add[] up to anything mitigating at least.

(Sentencing Tr. at 28)[4] I then briefly discussed the remaining § 3553(a) factors. (*Id.* at 27–28)

---

[4]      That discussion was occasioned by a passage in the PSR regarding Mr. Grippo's cooperation in
furnishing the probation department with relevant financial information:

> The defendant has been somewhat less than cooperative and nor
> forthcoming with regard to his financial situation. In addition to the
> lengthy delay in submitting his Personal Financial Statement and
> supporting documentation, when he did submit the documents (and even
> after a second re-submission at nearly midnight on May 30, 2013), they
> remain incomplete. Most disturbingly, the incomplete sections appear to
> have been purposely left blank. For example, on his Monthly Cash Flow
> Statement, he left blank the sections of salary/wages, cash bonuses,
> commissions, business income, pensions/annuities (although he
> submitted a letter which set forth his monthly pension amount), and
> income(s) of other(s) inhouse. Yet the defendant completed 18 sections
> for areas which did not apply to him and in which he indicated "none" or
> "N/A." Also, Grippo submitted one paystub which reflected a weekly
> earning of $350; however, his earnings for other weeks (per deposits in
> his wife's bank statements) were 3 to 7 times higher.

(PSR at p.44) I did not rely on these facts, however. *See supra.*

Ultimately, I selected a sentence close to the top of the Guideline range. The Court sentenced Mr. Grippo to 96 months' imprisonment on Count 1, and 30 months apiece on Counts 2, 3, and 4, all to be served concurrently. (Sentencing Tr. at 30; *see also* Amended Judgment, Dkt. No. 19-4.) Mr. Grippo did not file a direct appeal from his judgment of conviction and sentence.

In July, 2014, Mr. Grippo filed this Section 2255 action. He raises the following claims of ineffective assistance of counsel:

1. Improperly waiving Mr. Grippo's right to collateral review ("Claim I").

2. Failure in negotiating the plea ("Claim II").

3. Failure to investigate the case ("Claim III").

4. Failure to advise Mr. Grippo on the strengths and weaknesses of entering the guilty plea ("Claim IV").

5. Failure to familiarize himself with the law of the case ("Claim V")

6. Ineffectiveness at sentencing ("Claim VI").

In addition, Grippo argues that his "sentence was imposed in violation of the Fifth Amendment right not to be sentenced based on materially inaccurate information and false assumptions" ("Claim VII").

The government filed an answer in opposition to Mr. Grippo's § 2255 motion. Thereafter, Mr. Grippo sought leave to take discovery, which the government opposes. Additionally, Mr. Grippo seeks to amend his Section 2255 motion to add a claim that a Guidelines adjustment for offenses involving more than ten victims was erroneously applied.

### III.    LEGAL STANDARD FOR § 2255 MOTION

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds ... [t]here has been such a

denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte,* 865 F.2d at 62).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Mr. Grippo's claims for the most part assert ineffective assistance of counsel.[5]

The Sixth Amendment guarantees each criminal defendant not just assistance but effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated a two-pronged test for demonstrating ineffectiveness.

First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett,* 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted). A petitioner must identify the particular acts or omissions that are challenged as unprofessional. *See Strickland,* 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court

---

[5]     The non-ineffective-assistance claims are Claim VII and the claim of Guidelines error that Mr. Grippo seeks to add in his motion to amend. These are discussed separately and denied in Sections V.F and V.G, *infra.*

must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, then counsel's strategic choices are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland,* 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland,* 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale,* 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

In the context of a guilty plea, this prejudice requirement requires that defendant "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). In the context of sentencing, prejudice requires a reasonable probability that, but for counsel's error, the

result of the sentencing proceeding would have been different—*i.e.,* more favorable to the defendant. *See United States v. Polk,* 577 F.3d 515, 520 (3d Cir. 2009).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Rainey v. Varner,* 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland,* 466 U.S. at 697).

## V.   DISCUSSION

### A.  Claim I – Waiving right to collaterally attack judgment of conviction and sentence

In Claim I, Mr. Grippo claims that Mr. McMahon was ineffective by improperly waiving his right to file a Section 2255 action. The government notes in response that the plea agreement does not contain an explicit waiver of claims of ineffective assistance of counsel, which constitute the bulk of the claims here. The government does not assert that such claims are waived.[6]

Mr. Grippo's claim for collateral relief on Claim I is therefore denied as moot.

### B.  Claim II – Failure in negotiating plea

In Claim II, Mr. Grippo states that Mr. McMahon was ineffective because he "took no affirmative steps to obtain a more favorable plea." Mr. Grippo cites *Missouri v. Frye,* 132 S. Ct. 1399 (2012). There, however, the United States Supreme Court held only that "defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be acceptable to the accused." 132 S. Ct. at 1408. Counsel's failure to

---

[6]     Relatedly, claims of ineffective assistance ordinarily are not heard on direct appeal, and therefore are not subject to the "cause and prejudice" standard on collateral review. *See* Section V.F, *infra.*

communicate such a formal offer to the defendant constitutes deficient performance. *See id.* at

1409. Prejudice, however, must be shown:

> To show prejudice from ineffective assistance of counsel where a
> plea offer has lapsed or been rejected because of counsel's
> deficient performance, defendants must demonstrate a reasonable
> probability they would have accepted the earlier plea offer had
> they been afforded effective assistance of counsel. Defendants
> must also demonstrate a reasonable probability the plea would
> have been entered without the prosecution cancelling it or the trial
> court refusing to accept it, if they had the authority to exercise that
> discretion under state law.

*Id.*

*Frye* has no particular application here. Unlike the defendant in *Frye*, Mr. Grippo does

not allege that Mr. McMahon fell down on the job by failing to communicate a formal plea offer

to him and thereby denying him the opportunity to accept it. He merely complains that the offer

that was communicated to him, and that he did accept, was not good enough.

The same day that the United States Supreme Court decided *Frye*, it decided *Lafler v.

Cooper*, 132 S. Ct. 1376 (2012). In *Lafler,* counsel's ineffectiveness in the plea negotiation

process caused the defendant to go to trial, forgoing a plea deal that would have resulted in a

shorter sentence. *See* 132 S. Ct. at 1386. Under such circumstances:

> a defendant must show that but for the ineffective advice of
> counsel there is a reasonable probability that the plea offer would
> have been presented to the court (*i.e.,* that the defendant would
> have accepted the plea and the prosecution would not have
> withdrawn it in light of intervening circumstances), that the court
> would have accepted its terms, and that the conviction or sentence,
> or both, under the offer's terms would have been less severe than
> under the judgment and sentence that in fact were imposed.

132 S. Ct. at 1385. The Supreme Court held that the proper remedy was to order the prosecution

to reoffer the plea agreement and allow the state trial court to "exercise its discretion in

determining whether to vacate the convictions and resentence respondent pursuant to the plea

agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed." *Id.* at 1391.

*Lafler,* too, does not apply. Mr. Grippo does not claim that he, like the defendant in *Lafler,* decided to forgo a favorable plea deal and go to trial instead. He accepted the deal that the prosecution offered and pled guilty. Again, he merely complains in retrospect that the deal should have been better.

More generally, the argument that Mr. Grippo does make fails to rise to the level of requiring § 2255 relief. He presents no plausible contention that competent counsel would have obtained a better plea offer from the government. *See Suzrez v. United States,* No. 13-2981, 2016 WL 34324634, at *5 (S.D.N.Y. June 16, 2016) ("Petitioner simply has not shown that a more favorable [plea] deal would have been offered by the government, and Petitioner's bald assertion that he was entitled to a better plea bargain is not a basis upon which habeas relief can be granted."); *Cummings v. United States,* No. 112-124; 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013) (petitioner fails to show prejudice by counsel's failure to negotiate more favorable plea agreement with nothing more than bald assertion that such an agreement might have been possible). Any defendant who has pled guilty, I suppose, may hypothesize a "better" plea. To state a § 2255 claim, however, the movant must state what such a plea would have been and offer some plausible reason why competent counsel could have induced the government to agree to it.

Mr. Grippo also fails to allege prejudice, in the sense that, if competently advised, he would have declined to plead guilty and would have proceeded to trial. He makes no such contention. *See, e.g., Williams v. United States,* No. 14-1280, 2015 WL 1750977, at *5 (S.D. Ill. April 15, 2015) (counsel's failure to obtain a more favorable plea deal is not enough to show prejudice under *Strickland*; instead, a petitioner must show that he would not have pled guilty

and would have gone to trial); *Matusiewicz v. United States*, No. 11-0394, 2014 WL 3362365, at *6 (D. Del. July 2, 2014) (petitioner fails to show prejudice on claim that counsel failed to negotiate a more favorable plea where he does not assert that he would not have pled guilty and would have proceeded to trial but for counsel's conduct) (citing *United States v. Jones*, No. 12-2046, 2014 WL 2587008, at *6 (E.D. Pa. June 10, 2014)). *See generally Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Accordingly, collateral relief on Claim II is denied.

Mr. Grippo's fallback is that he is entitled to discovery on the issue of whether Mr. McMahon could have negotiated a better plea agreement with the government. On a § 2255 motion, a court may "for good cause" authorize a party to conduct discovery. *See* Rule 6 of the Rules Governing Section 2255 Proceedings; *see also Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011) (interpreting analogous rule for habeas petitions challenging state court convictions). A habeas petitioner satisfies this standard "by setting forth specific factual allegations which, if fully developed, would entitle him or her" to habeas relief. *Id.* "The burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." *Id.* The court will reject discovery requests based on no more than speculation or the unsupported desire to look for the basis of a claim. *See id.* at 210-11.

For the reasons already stated, Mr. Grippo has not made the slightest factual proffer that a better plea offer was actually or potentially on the table. The evidence, largely documentary, seemed persuasive, and the offense outrageous. At sentencing, having heard the testimony and read the statements of the victims, I stated in substance that, but for the plea counsel had negotiated, which tied the government's hands to some degree, things could have gone far worse for this defendant: "[D]ollar gain or loss doesn't begin to capture the harm done by the offense.

Frankly, if I were writing on a clean slate considering whether to vary, I wouldn't be dreaming of a variance downward, I would probably be thinking of a variance upward in [*sic*; read "from"] the Guideline range." (Sentencing Tr. at 25)

Mr. Grippo's application for discovery, like his substantive claim, is based on nothing more than wishful thinking. He is not entitled to discovery merely because he would have preferred a more lenient plea offer. *See, e.g.*, *Estrada v. United States*, No. 04-1394, 2007 WL 1461701, at *8 (N.D. Tex. May 18, 2007) (denying movant's motion for discovery as he "may not rely solely on his own affirmation that he was presented with a plea offer that would have capped his sentence at ten years imprisonment. He must either point to something in the record to support such a claim or provide some independent, reliable indicia to support such claim.").

Mr. Grippo has suggested no reason to think that the prosecution would or should have shown more leniency. Accordingly, he is not entitled to collateral relief or discovery on Claim II.

C. Claim III – Failure to investigate

In Claim III, Mr. Grippo argues that Mr. McMahon was ineffective because he failed to investigate the case. In his declaration, Mr. Grippo states as follows:

> I have a good faith belief that attorney McMahon made no effort to investigate my case and the circumstances of the underlying transactions.
>
> On several occasions I requested that Attorney McMahon provide me with a complete copy of my file. A review of the file returned to me evidence no discovery or investigation activity. There were no copies of 302 reports, no witness interviews, no loan documentation, no checks or bank statements and no investigator reports. Quite simply, there was none of the typical documentary items that would normally be found if investigation was conducted.
>
> If Attorney McMahon would have conducted even a minimal level of investigation he would have learned that the intended loss was not greater than 1 million dollars, the victim count was less than ten and there were no vulnerable victims.

(Dkt. No. 4-1 at p.19-20)

As the government notes in its response, Mr. Grippo fails to show prejudice on this claim. In the guilty plea context, Mr. Grippo needs to show to a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Mr. Grippo fails even to allege, let alone proffer a showing of, such prejudice.

In his declaration on this motion, Mr. Grippo acknowledges that he "advised Attorney McMahon that I would plead guilty for I am guilty." (Dkt. No. 4-1 at 22) Mr. Grippo knows, and knew at the time, the facts underlying his case. He fails to explain away his solemn admissions under oath in connection with his guilty plea, or his failure to object to the facts in the PSR. He fails to explain why, if the loss was less than $1 million, he agreed to an order of restitution for approximately $1.3 million. He fails to articulate factually any supposedly prejudicial factual inaccuracy that a thorough investigation would have uncovered.

Accordingly, Mr. Grippo is not entitled to collateral relief on Claim III.

D. Claim IV – Failure to advise of strength and weaknesses of agreeing to plea

In Claim IV, Mr. Grippo argues that Mr. McMahon rendered ineffective assistance of counsel by failing to advise him of the "strengths and weaknesses" of the plea agreement.

The United States Supreme Court has explained that:

> the representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *see also United States v. Stewart,* 977 F.2d 81, 84 (3d Cir. 1992) ("The ritual of the [plea] colloquy is but a means toward determining whether the plea was voluntary and knowing. A transcript showing full compliance with the customary inquires and admonitions furnishes, strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences.").

As stated in Part II, *supra,* Mr. Grippo stated in his Application for Permission to Plead Guilty that he believed that Mr. McMahon had done all that anyone could do to counsel and assist him, and that he was satisfied with the advice and help Mr. McMahon had given him. (*See* Dkt. No. 12-4 at ¶ 42) In open court during the plea hearing, Mr. Grippo admitted to this Court under oath that his attorney answered all of his questions about the plea agreement and explained it to his satisfaction. (*See* Dkt. No. 12-3 at p.11)

Mr. Grippo does not reveal what he supposedly knows now that he did not know then. His general, conclusory statement that his attorney did not explain to him the "strengths and weaknesses" of the plea agreement is insufficient to overcome the strong *Blackledge* presumption based on his solemn, on-the-record admission of guilt. He does not identify any specific lapse, or even identify any crucial advice that was withheld. He fails to show that, contrary to his own sworn admissions, counsel failed to explain the plea agreement and therefore fell below professional standards.

Furthermore, petitioner has also failed to show prejudice. He does not allege that, had counsel explained some particular "strength" or "weakness" of the plea deal, he would not have pled guilty but would have insisted on going to trial. Indeed, Mr. Grippo admits in his declaration that he told Mr. McMahon that he would plead guilty because he was guilty. (*See*

Dkt. No. 4-1 at p.22) The Court carefully warned Mr. Grippo of his rights and made clear to him the rights he was giving up by pleading guilty.

Mr. Grippo is not entitled to collateral relief on Claim IV.

E.   <u>Claims V and VI – Ineffectiveness at sentencing</u>

Claims V and VI are interrelated. In Claim V, Mr. Grippo states that Mr. McMahon was ineffective because he failed to familiarize himself with the law as it relates to sentencing. More specifically, Mr. Grippo states that Mr. McMahon failed to familiarize himself with or take advantage of the Section 3553 factors. In particular, he says, Mr. McMahon failed to make appropriate arguments regarding sentence disparity and the need for restitution to the victims. Additionally, Mr. Grippo states that Mr. McMahon failed to familiarize himself with the law as it relates to sentencing enhancements, such as intended loss and vulnerable victims. Similarly, in Claim VI, Mr. Grippo states that counsel was ineffective at sentencing because he failed to ensure that the appropriate Section 3553(a) factors were applied. Within Claim VI, Mr. Grippo also states that Mr. McMahon failed to obtain necessary financial data.

Mr. Grippo fails to show that counsel's performance fell below an objective standard of reasonableness in relation to the Section 3553(a) factors. He states or implies that his counsel was not familiar with those factors. Mr. McMahon, however, submitted a sentencing memorandum, dated June 10, 2013. Point II of that memorandum was titled "In Determining The Appropriate Sentence, The Court Must Consider The Factors Set Forth in 18 U.S.C. § 3553(a) and Impose the Minimally Sufficient Sentence." In that section of the memo, McMahon argued in favor of application of the § 3553(a) factors that he felt most favored his client. In particular, he attempted to persuade the Court that a sentence at the bottom of the range would serve the punitive, deterrent, and rehabilitative goals of sentencing, while keeping the public safe.

A review of the sentencing hearing transcript also reveals Mr. McMahon's familiarity with the Section 3553(a) factors. (*See* Sentencing Tr. at 7-12) Mr. Grippo faults him for failing to stress the factor requiring avoidance of unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Forgoing a disparate-sentence argument was a reasonable strategic decision, given that all had agreed to a within-range Guidelines sentence. And counsel did make a more focused disparate-sentencing argument at the sentencing hearing. (*See id.* at p.6-7) ("One of the coconspirators on a state case was given eight years….Well that person only did a little over a year in custody.") Nor did Mr. McMahon inappropriately fail to invoke restitution. He stressed Mr. Grippo's acceptance of his restitution obligations, and suggested that the goal of restitution would be promoted by a shorter sentence of incarceration. (*See id.* at p.9-11) That, too, was a reasonable strategic choice, given that minimization of jail time is of paramount importance to most defendants.

The notion that Mr. McMahon, an experienced criminal defense attorney, was unfamiliar with these ordinary features of the sentencing process cannot be sustained in the face of this record. Prejudice, too, is lacking; the Court thoroughly analyzed the § 3553(a) factors in imposing sentence. That Mr. McMahon's arguments did not prevail does not reflect substandard performance on his part.

In Claim V, Mr. Grippo also states that Mr. McMahon failed to familiarize himself with the law as it relates to sentencing enhancements such as intended loss and vulnerable victims. In the context of a claim of ineffective assistance during sentencing, the necessary showing of prejudice requires a reasonable probability that the result of the sentencing proceeding would have been different but for counsel's error. *See United States v. Polk*, 577 F.3d 515, 520 (3d Cir. 2009). That showing is lacking here.

Mr. Grippo fails to show such prejudice, because he cannot demonstrate that the enhancements for a loss of more than $1,000,000 and vulnerable victims were inaccurate. *See* U.S.S.G. § 2B1.1(b)(1); U.S.S.G. § 3A1.1(b)(1).

Mr. Grippo provides nothing to rebut the findings supporting an upward adjustment based on a loss of over $1 million but less than $2.5 million. U.S.S.G. § 2B1.1(b)(1) (2011 ed.). In the plea agreement, Mr. Grippo agreed to that figure. (*See* Dkt. No. 12-2 at p.9.) He lodged no objection to the PSR's calculation on that basis. The figure is corroborated by a preliminary consent order of forfeiture in the amount of $1,319,721, and a final consent order of restitution in the amount of $1,275,828.00. (*See* PSR at p.18; Dkt. No. 12-2 at pp.5, 9; Dkt. No. 19-3). Those forfeiture/restitution figures represent the proceeds obtained by Mr. Grippo and his son as a result of the offense.

Mr. Grippo states that "counsel never explained to Petitioner that he was to receive credits for monies actually paid to the home owners at the time of the transactions. Petitioner has a good faith belief that said payments reduce the loss calculation to less than one million dollars." (*See* Dkt. No. 18 at p.4) The principal amount of the mortage loans, of course, was far higher than $1 million—taking all related activity into account, it was in the neighborhood of $18.2 million, and considering only the charged conduct, it was about $4.4 million. (PSR ¶ 19) To be sure, that figure, to be considered a "loss," would have to be offset to reflect value received by the banks or homeowners. But the loss was not calculated as $18 million, or $4.4 million; it was calculated as being in excess of $1 million. That $1 million figure—which represented the gain to the defendant—probably understated the loss to the victims. But by definition it represents the amounts the conspirators got away with. Counsel's decision to stand

by the stipulation in the plea agreement, which avoided opening up the whole panoply of potentially relevant conduct, was a reasonable strategic decision.

Mr. Grippo's request for discovery as to the amount of the loss must be denied for the same reasons. He offers nothing but his alleged "good faith belief" in support of the request. The facts at all times were in his control. He agreed to the facts in connection with his plea and sentencing, expressed great remorse, and enjoyed the benefit of a 3-point reduction for acceptance of responsibility. His request for discovery lacks good cause and therefore will not be permitted.

As to the vulnerable-victim enhancement, U.S.S.G. § 3A1.1(b)(1), Mr. Grippo comes forward with nothing but his conclusory statement that the victims were not vulnerable. The victims' testimony at sentencing (*see* Sentencing Tr. at 13–20), as well as the facts in the PSR (*see* ¶¶ 20–82), eloquently established that this enhancement was merited. The victims' financial desperation, their lack of English language skills, and the like, were unrebutted. Mr. Grippo stipulated in the plea agreement that the victims were vulnerable. At sentencing, he expressed great remorse for harming them. (Sentencing Tr. at 21-22)  His conclusory denial now, without any supporting facts, is insufficient to set aside his contrary factual stipulation.

Within Claim VI, Mr. Grippo also argues that counsel was ineffective for failing to obtain the necessary financial data to satisfy his legal obligations. (*See* Dkt. No. 4-1 at p.16-17) The financial records in question, I note, belong to or should have been obtainable by Mr. Grippo himself. The Probation Office faulted Mr. Grippo (not his counsel) for being less than forthcoming. The Court, however, opted *not* to take that circumstance into account in fixing Mr. Grippo's sentence. The Court expressly noted that it was not making any factual finding with respect to this failure to produce records. (*See* Sentencing Tr. at p.28 ("There are disturbing

aspects to his interactions with the probation office. I'm not going to have a hearing or make factual findings on that, given that I think the other factors that play here, including and especially the nature of the offense and the harm to the victims, is quite ample to justify a sentence at the upper end of the range.")) Nor does Mr. Grippo state what was in those records, or how it would have helped him at sentencing.

Mr. Grippo therefore fails to show that the outcome of his sentencing would have been different if the Probation Office had received all relevant financial documents. Accordingly, Mr. Grippo fails to show that he is entitled to collateral relief on Claim VI.

F.  Claim VII – Sentence based on inaccurate information

In Claim VII, Mr. Grippo claims that his sentence violates the Fifth Amendment because it was based on materially inaccurate information. This is not a claim of ineffective assistance, but rather a parallel claim of substantive error.

Claims other than ineffective assistance which are forgone on direct appeal generally may not be raised on collateral review in a § 2255 motion. *See United States v. Frady,* 456 U.S. 152, 162–63 (1982). This procedural default rule protects "society's legitimate interest in the finality of the judgment [that] has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." *Id.* at 164. To overcome procedural default, the petitioner must demonstrate cause and prejudice. *See Massaro v. United States,* 538 U.S. 500, 504 (2003). Cause must be something objective and external to the petitioner. *See Murray v. Carrier,* 477 U.S. 478, 488 (1986). The defendant bears the burden of proof, and "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady,* 456 U.S. at 166.

Even if this claim were considered, however, it necessarily would be denied. It is essentially a substantive claim, parallel to those already raised in the guise of ineffective assistance of counsel. (*See* Sections V.B through V.E, *supra*.) In their substantive guise, these claims are no more persuasive.

For the reasons expressed in the preceding sections, Claim VII will therefore be denied.

### G. Motion to Amend Regarding Guideline Adjustment for Ten or More Victims

Mr. Grippo has also filed a motion to amend his § 2255 motion. In this motion, Mr. Grippo seeks to add a claim that his "advisory guideline calculation was erroneously calculated as there were not ten (10) or more victims." (Dkt. No. 21 at p.2) *See* U.S.S.G. § 2B1.1(2)(a). The motion to amend will be denied on grounds of futility.

This is an ordinary claim of sentencing error which (absent a waiver, of course) would be grist for the appellate mill. Even if amendment were permitted, the cause-and-prejudice requirement would probably prevent its assertion on a § 2255 motion.

But even if the claim were entertained, it would be denied. The PSR's factual findings— to which Mr. Grippo, again, agreed—allude to relevant conduct including "nearly 50 fraudulent real estate transactions." (PSR ¶ 19) Considering only the scheme as charged, Probation's investigation revealed at least 20 individual and 5 corporate victims.[7]

Because any such amendment would be futile, the motion to amend is denied.

---

[7]     Individual mortgagor victims identified in direct interviews include Z.M. and E.P. (PSR ¶ 20); F.L., D.L., and F.L.'s mother (PSR ¶ 29); J.R. (PSR ¶ 36); R.S. (PSR ¶ 42). Others identified by Probation (eliminating duplicates) include E.M. & E.M.; J.L. & J.L.; M.M. & P.M.; G.B; D.M.; A.G.; R.W.; S.M. & C.Z.; and J.G. (PSR ¶ 45 (table)). In addition, there were five corporate mortgage lenders who lost money as a result of the scam. (*See* PSR ¶ 75; Forfeiture Order and Final Consent Order of Restitution). Straw buyers or "investors" cannot definitively be identified as co-participants, as opposed to dupes. I do not include them in the count.

## VI.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VII.    CONCLUSION

For the foregoing reasons, Mr. Grippo's motion for discovery, motion to amend, and motion to vacate, modify, or set aside sentence under 28 U.S.C. § 2255 will be denied. The Court declines to grant a certificate of appealability.  An appropriate order will be entered.


DATED:  December 13, 2016

KEVIN MCNULTY
United States District Judge